J-A07041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMES D. LOVE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUTH A. LOVE | : | |
| | : | |
| Appellant | : | No. 1515 MDA 2025 |

Appeal from the Order Entered October 3, 2025
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2024-FM-0181

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                 **FILED: APRIL 27, 2026**

Ruth A. Love ("Mother") appeals from the October 3, 2025 order entered in the Court of Common Pleas of Lebanon County, which denied Mother's request to relocate from Pennsylvania to Colorado with the parties' two minor children, E.F.L. (born in July 2018) and E.M.L. (born in November 2020) (collectively, "Children"), and modified the terms of the parties' custody.  After careful review, we affirm.

### Background

Mother and James D. Love ("Father") married in 2010, in Littleton, Colorado, where they grew up.  Mother's Brief at 34.  They moved to Pennsylvania in 2012 for Father's career.  Mother's Pre-Trial Statement, 1/1/25, at 1.  Both the maternal grandparents and paternal grandparents still live in Littleton, Colorado. *Id.*  The parties separated in April of 2024.  Father's Brief at 2.

Mother is currently residing with the Children in the marital home, located in Palmyra, Pennsylvania. Mother's Brief at 34. Father lives in Lititz, Pennsylvania, "just over thirty minutes" away from the marital residence. Father's Brief at 2. During their marriage, Father was the primary wage earner, while Mother stayed home to care for their Children. Mother's Brief at 35, 40; Father's Brief at 3-4. Father is currently employed as the Vice President of Software for Tait Towers. N.T., 8/7/25, at 18. He typically works from 8:00 a.m. to 5:00 p.m., Monday through Friday, but has "quite a bit of flexibility" in his schedule. *Id.* at 18-19. His job also requires occasional travel. Father's Brief at 3. Mother is currently unemployed. Mother's Brief at 39. She was previously licensed to teach in Pennsylvania; however, the parties agreed to allow her license to lapse after the birth of E.F.L. *Id.* at 39-40. Since the parties' separation, Mother has been applying for jobs and working to complete the requirements to reinstate her teaching license in Pennsylvania. *Id.* at 40-41. She has successfully obtained her teaching license in Colorado. *Id.* at 41.

The relevant procedural history of this matter was summarized by the trial court as follows:

> Mother filed a complaint for custody on May 29, 2024. A custody conciliation conference was held on May 31, 2024, with the custody conciliator … issuing a custody conciliation summary report thereafter. As an agreement was not reached between the parties, the conciliator granted shared legal custody of the … Children to the parties[,] with Mother having primary physical custody. At a minimum, Father was awarded physical custody of the … Children on a two (2) weekends on, one (1) weekend off schedule[,] such that Father shall exercise custody two (2)

weekends in a row from Friday at 6:00 p.m. until Sunday at 6:30 p.m. On August 28, 2024, the [trial] court entered a temporary order of custody in accordance with the recommendations of the custody conciliator.

A mediation was held on November 1, 2024, but while the parties appeared with their respective counsel, a resolution was not reached and it [was] recommended to the [trial] court that the [August 28, 2024] order … abide, with modifications entered on December 24, 2024, as a partial stipulation. On December 24, 2024, the parties entered into a partial custody stipulation which had no effect on the custody schedule other than providing an agreed upon schedule for holidays.

During this time, Mother filed a Notice of Proposed Relocation[, proposing to relocate with the Children to Littleton, Colorado, to] which Father objected…. A pre-trial conference was held on January 7, 2025, and a status conference was held on March 6, 2025. A relocation hearing and *de novo* custody hearing were held on April 18, 2025, and August 7, 2025….

Trial Court Opinion ("TCO I"), 10/3/25, at 1-2 (cleaned up).

By order dated October 3, 2025, the trial court denied Mother's relocation request, granted the parties shared legal custody, and granted Mother primary physical custody. *See* Order, 10/3/25, at ¶ 1. It further directed, in pertinent part:

Father shall have custody liberally, generously[,] and at times as the parties shall reasonably agree. If the parties are unable to agree, then the parents shall exercise physical custody as follows:

    a. Continuing the same custodial schedule as currently in place, Father shall exercise custody on a two (2) weekends on, one (1) weekend off schedule. Father's weekends shall be measured from Friday at 6:00 p.m. until Sunday at 6:30 p.m.

    b. Father shall have a weeknight visit with the … Children to take place on Wednesday's [*sic*] from 5:30 p.m. until 8:00 p.m., unless the parties come to an agreement for a different night and time.

- 3 -

*Id.* at ¶ 3. Alternatively, if Mother decides to relocate without the Children, the trial court directed Father shall have primary physical custody, exercising his custody during the school year, with Mother exercising her custody over the summer break. *Id.* at ¶ 1.

On October 31, 2025, Mother filed a timely notice of appeal, along with her concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i). On November 17, 2025, the trial court filed an opinion pursuant to Rule 1925(a)(2)(ii), which briefly addressed the issues raised by Mother in her concise statement and referred to its analysis in its October 3, 2025 opinion.

**Issues**

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion in finding that [Mother] did not meet her burden of proof pursuant to 23 Pa.C.S. § 5337?

2. Whether the trial court abused its discretion and erred as a matter of law in determining the weight of the 23 Pa.C.S. § 5337(h) factors and incorrectly determined Mother's relocation request should be denied contrary to the evidence and testimony presented at trial?

3. Whether the trial court abused its discretion by failing to grant Mother's relocation request as a result of personal bias against Mother[,] despite the 23 Pa.C.S. §[]5337(h) factors and 23 Pa.C.S. §[]5328 factors weighing in Mother's favor?

4. Whether the trial court's determination that … Father would be negatively impacted should … Mother be permitted to relocate is contrary to the evidence and testimony presented at [the] time of trial[,] given that the [t]rial [c]ourt agreed it would be in the best interest of the … Children for Mother to have primary custody?

Mother's Brief at 29-30.

## Discussion

We review custody determinations under the following scope and standard of review:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> ***E.D. v. M.P.***, 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted). With any child custody case, this Court has long stated that the paramount concern is the best interests of the child. ***Landis v. Landis***, 869 A.2d 1003, 1011 (Pa. Super. 2005). This standard requires a case-by-case assessment of all of the factors that may legitimately affect the "physical, intellectual, moral and spiritual well-being" of the child. ***Id.*** When a custody dispute involves a request by a party to relocate, we have explained, "there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." ***Baldwin v. Baldwin***, 710 A.2d 610, 614 (Pa. Super. 1998).

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012).

Pursuant to Section 5337 of the Child Custody Act, 23 Pa.C.S. §§ 5321–5340, a parent with custody rights to a child may not relocate unless "every individual who has custody rights to the child consents to the proposed

relocation" or "the court approves the proposed relocation." 23 Pa.C.S. § 5337(b)(1) and (2). In other words, a parent seeking to relocate ("the relocating parent") cannot unilaterally relocate. The relocating parent must provide notice of the proposed relocation to the other custodial party or parties ("the nonrelocating party") in compliance with subsection (c). 23 Pa.C.S. § 5337(c). The nonrelocating party "may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation." 23 Pa.C.S. § 5337(d). If the nonrelocating party "objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1)." *Id.*

Section 5337(h) sets forth ten factors a trial court must consider in determining whether to grant or deny a proposed relocation, "giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5337(h). Those factors are:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

- 6 -

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

*Id.* "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth under subsection (h)." 23 Pa.C.S. § 5337(i)(1). "Each party has the burden of establishing the integrity of the party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

"If the proposed relocation will result in a change in custody, the court must also consider the custody factors in Section 5328(a)." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018). At the time of the relevant proceedings, those factors included:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past

or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in [S]ection 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a) (effective Aug. 13, 2024 to Aug. 28, 2025).[1] The trial court must give "substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1)[,] and (2.2)[,] which affect the safety of the child." *Id.*

While a court's consideration of the Section 5328 custody factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019) (citation omitted). Moreover, we observe several of the Section 5337(h) relocation factors "are encompassed, either directly or implicitly, by the custody factors of [S]ection 5328(a)." *K.F.*, 189 A.3d at 1098 (citation omitted). "A court should avoid dissociating the issue of primary custody from the issue of relocation[] and

---

[1] The General Assembly has since amended the Section 5328(a) custody factors. *See* 23 Pa.C.S. § 5328 (Act of June 30, 2025, P.L. 18, No. 11, § 1, effective Aug. 29, 2025).

- 9 -

should instead decide the two issues together under a single umbrella of best interests of the children." *Id.* (internal quotation marks and citation omitted).

### I. Burden of Proof and Weight of the Evidence

The first two issues in Mother's Statement of Questions Presented — which are identical to the first two issues listed in her Rule 1925(b) concise statement — raise a general challenge to the trial court's findings under Section 5337, its determinations regarding the credibility and weight of the evidence, and the weight it attributed to the relocation factors. *See* Mother's Brief at 29.[2] In the argument section of her brief, however, Mother specifically alleges the trial court erred in finding relocation factors 2, 3, and 9 neutral and relocation factor 7 in favor of Father. *Id.* at 52. She also avers the trial court failed to address relocation factor 8. *Id.* In support, she claims the trial court ignored certain evidence favoring Mother, *see, e.g.*, *id.* at 52-53, 54-56, improperly weighed other evidence, *see, e.g.*, *id.* at 58-59, and "placed an inordinate amount of weight" on certain factors it found to favor Father, *id.* at 61-62.[3] For the following reasons, we conclude no relief is due on these claims.

_____

[2] Mother does not contest any of the trial court's determinations as to the Section 5328(a) custody factors. Thus, any such claims are deemed waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

[3] We remind Mother the Pennsylvania Rules of Appellate Procedure dictate a Rule 1925(b) concise statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be
*(Footnote Continued Next Page)*

- 10 -

The trial court heard two full days of testimony from Mother and Father. Assessing their credibility and weighing the evidence presented, the trial court considered all the custody and relocation factors set forth in Sections 5328(a) and 5337(h) of the Custody Act. It addressed its findings as to each factor in its October 3, 2025 opinion and ultimately concluded Mother failed to establish the proposed relocation would serve the best interest of the Children. **See generally** TCO I at 6-13 (finding only two relocation factors favoring Mother); **see also** Order, 10/3/25, at ¶ 1 (denying Mother's proposed relocation). We summarize the trial court's determinations as to the factors Mother challenges on appeal — namely, relocation factors 2, 3, 7, 8, and 9 — as follows.[4]

_____

raised for the judge." Pa.R.A.P. 1925(b)(4)(ii); **see also S.S. v. T.J.**, 212 A.3d 1026, 1031 (Pa. Super. 2019) (directing "the statement must be concise and sufficiently specific … as to allow the trial court to understand the allegation of error and offer a rebuttal"). "Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." **Kanter v. Epstein**, 866 A.2d 394, 400 (Pa. Super. 2004) (citation omitted). "[T]his Court may find waiver where a concise statement is too vague." **In re A.B.**, 63 A.3d 345, 350 (Pa. Super. 2013) (citation omitted). While the lack of specificity in Mother's Rule 1925(b) statement deprived the trial court of the opportunity to respond to some of the specific allegations in her appellate brief, we do not consider Mother's concise statement so vague as to impede our ability to conduct meaningful appellate review. **See id.** Thus, we decline to find Mother's first two issues waived.

[4] Any claims regarding relocation factors 1, 4, 5, 6, and 10 are deemed waived. **See In re M.Z.T.M.W.**, 163 A.3d 462, 465 (Pa. Super. 2017) ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief[] and supported by citations to relevant authority."); **In re A.C.**, 991 A.2d 884, 887 (Pa. Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted).

Relocation factor 2 requires the trial court to consider "[t]he age, developmental stage, needs of the child[,] and the likely impact the relocation will have on the child's physical, educational[,] and emotional development, taking into consideration any special needs of the child." 23 Pa.C.S. § 5337(h)(2). The trial court found this factor to be neutral between the parties, observing both Children are "doing well in school" and are involved in extracurricular activities, as well as play therapy. TCO I at 9. It also found both Mother and Father attend parent-teacher conferences and the Children's extracurricular activities. *Id.* The trial court elaborated in its Rule 1925(a) opinion, explaining it found Mother failed to establish the Children's physical, educational, and emotional development would improve by relocating. Trial Court Opinion ("TCO II"), 11/17/25, at 8. It emphasized the Children appear "happy and thoughtful[,]" and noted they "enjoy spending time with both of [their parents,] … have friends in the area[,] and are involved in activities here." *Id.*

Relocation factor 3 pertains to "[t]he feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties." 23 Pa.C.S. § 5337(h)(3). The trial court found this factor to be neutral as to the parties' current living situations. TCO I at 11. However, it stated if Mother were to relocate, this factor would weigh heavily in favor of Father. *Id.* In support of its determination, the trial court noted the parties currently reside approximately thirty minutes from one another, which it

considers "a manageable drive time between homes." ***Id.*** at 10; ***see also*** TCO II at 8 (noting Father is currently "exercising periods of custody on a two (2) weekend[s] on, one (1) weekend off schedule"). If Mother were to relocate to Colorado, the court found the relocation "would not only severely hinder Father's periods of custody[,] but also interfere with Father's access to the … Children's daily lives, therefore negatively impacting Father's relationship with the Children." TCO II at 8; ***see also*** TCO I at 11 (same). Moreover, while Mother testified she would allow Father to visit the Children as often as he would like, the trial court recognized "that would require Father to take time off work and fly to Colorado." TCO I at 11.

Relocation factor 7 concerns whether "the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity." 23 Pa.C.S. § 5337(h)(7). The trial court found this factor weighed in favor of Father. It opined:

> Mother has failed to establish the general quality of life for the Children as well as the Children's physical, educational, and emotional development would improve. Mother provided testimony regarding schools in Colorado that the Children would attend. However, by Mother's own testimony, the schools in Colorado and the schools in the Lebanon area, including the Children's current schools, are comparable. Mother also testified that if she were to relocate with the … Children, the Children would sleep in the basement of maternal grandparent's house while Mother finds a residence. However, Mother was informed by … E.F.L.'s doctor that the basement would not be a suitable and healthy environment for him due to his asthma.
>
> On the other hand, the [trial c]ourt does find that the relocation will enhance the general quality of life for Mother as she still has an active teaching license in Colorado. The relocation would also benefit Mother emotionally as she would be closer to her family

- 13 -

who could provide support and assistance with the Children. However, Mother has failed to show that she has made an effort to find a job in the central Pennsylvania area. Instead, Mother testified that she allowed her teaching license to lapse in Pennsylvania and did not complete the required professional development hours because she didn't have the time.

Additionally, we do not believe that the … Children will receive [the] same emotional benefit as Mother would if the relocation were approved. Although the Children [would] be with Mother and extended family, the Children [would] be away from Father. While young, the [trial c]ourt found the … Children [to be] happy and thoughtful Children who stated that they love both parents and enjoy spending time with both of them. It is clear that the proposed relocation will severely impact Father's ability to be involved in the Children's daily lives. There was also testimony that the … Children have friends in the area and are involved in activities here.

This [c]ourt finds that the negative impact the relocation would have on the Children's relationship with Father substantially outweighs any benefit set forth by Mother.

TCO I at 12-13.

Relocation factor 8 relates to "[t]he reasons and motivation of each party for seeking or opposing the relocation." 23 Pa.C.S. § 5337(h)(8). The trial court determined this factor weighed in favor of Father. It explained:

Testimony was provided that Mother's proposed relocation to Colorado is based on the availability of extended family there[,] including both maternal and paternal grandparents. While this [c]ourt acknowledges the importance of those relationships with the … Children, we do not find that it outweighs the importance of preserving the … Children's relationship with Father.

TCO I at 12.

Relocation factor 9 requires the trial court to consider "[t]he present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party." 23

- 14 -

Pa.C.S. § 5337(h)(9). In its factor analysis, the trial court acknowledged testimony "regarding an incident of Father['s] becoming abusive against Mother over an argument about chainsaws." TCO I at 8. However, it "did not find … this testimony warranted much weight." *Id.* The trial court opined that, based on "what [it] heard from the parties," it was "not concerned about the safety of the Children." *Id.* Thus, it found this factor to be neutral. *Id.*

The trial court further explained its reasoning for denying Mother's proposed relocation in its Rule 1925(a) opinion, in which it emphasized its primary concern in this case has been the best interest of the Children. *See* TCO II at 7. It added:

> In making its determination of relocation and custody, this court considered all of the factors set forth in Pennsylvania's custody law. However, in this matter, we found some factors carried more weight than others. Specifically, the factors pertaining to the cooperation between parties, preservation of stability and relationships for the … Children, and the lack of enhancement the relocation would have on the … Children's general quality of life.

*Id.*

Pertinent to the factors concerning how Mother and Father interact with one another, the trial court noted:

> [T]here [was] a lot of ongoing conflict between the parties and … the majority of the hostility and inability to co-parent stems from Mother. Through evidence and testimony presented at trial[,] it appears Father is more than willing to co-parent, but Mother tries to undermine or interfere with Father's periods of custody. Mother's interference was evidenced by her lack of communication with Father regarding [the] Children's doctor's appointments or school information, as well as her refusal to grant Father extra time/make[-]up time upon Father's request. The court believed

- 15 -

this would only be exacerbated if Mother were to be allowed to relocate to Colorado with the … Children.

*Id.*

Finally, the trial court acknowledged "Mother has performed the majority of the parental duties for the … Children since birth[,] as she was a stay-at-home mom[,] and Father was the primary source of income when the parties were together." *Id.* at 8. However, it stated "Father is able to perform such duties and is willing to do so in the future." *Id.* With the foregoing in mind, the trial court found "the negative impact the relocation would have on the … Children's relationship with Father substantially outweighed any benefit set forth by Mother." *Id.* at 9.

On appeal, Mother claims the trial court erred and/or abused its discretion in determining she failed to meet her burden of proof under Section 5337 and in its weighing of the evidence. She presents a litany of examples from the record as to why she believes relocation factors 2, 3, 7, 8, and 9 should have been weighed in her favor instead of being found neutral or in favor of Father. We need not restate those examples here, because Mother is essentially asking this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to her view of the evidence, which we will not do.

Under the applicable standard of review, we are not permitted to disturb the trial court's findings of fact and determinations regarding credibility and weight of the evidence absent an abuse of discretion. *See C.R.F.*, *supra*. As we have previously explained,

> [i]n a custody appeal, the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision. Deference must be given to the trial court, who viewed the parties, the witnesses, and the evidence firsthand. It is not the role of this Court to re-find facts, re-weigh evidence, and re-assess credibility.

*Carrero v. Lopez*, 300 A.3d 494, 501 (Pa. Super. 2023). Moreover, it is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion in its custody determination. *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005).

Here, the evidence supporting the trial court's decision is largely the testimony of the parties. The crux of Mother's argument is that the trial court should have found her testimony more persuasive than Father's and/or given more weight to certain evidence which favors her argument. This Court has observed, "[t]he evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court." *White v. Malecki*, 296 A.3d 1210, 1215 (Pa. Super. 2023). That the trial court could have found for Mother is not a sufficient basis to reverse the court's decision. *See id.* "Deference must be given to the trial court, who viewed the parties, the witnesses, and the evidence firsthand." *Id.* Thus, Mother has failed to state a valid reason to overturn the trial court's decision.

To the extent Mother argues the trial court did not "clearly articulate" its determination as to relocation factor 8 (the parties' reasons for seeking or opposing the relocation), *see* Mother's Brief at 59-60, we deem this claim

meritless. In its analysis of this factor, the trial court referenced Mother's testimony regarding her desire to relocate to Colorado because of the availability of extended family there, including both maternal and paternal grandparents. *See* TCO I at 12. The trial court acknowledged "the importance of those relationships with the … Children," but clearly concluded those relationships do not outweigh the importance of preserving the Children's relationship with Father. *Id.* "In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanations; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (cleaned up). Thus, we are satisfied the trial court properly considered this factor.

As to Mother's contention "the trial court placed an inordinate amount of weight on factors that, in the court's determination, weighed in favor of Father and against granting [her] request for relocation[,]" Mother's Brief at 61-62, this claim is also meritless. When a proposed relocation will result in a change in custody, the trial court is required to consider all the relocation factors under Section 5337(h), as well as the custody factors set forth in Section 5328(a). *See K.F.*, 189 A.3d at 1098. "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B.*, 209 A.3d at 468. Here, the trial court indicated it considered all the relocation and custody factors, affording more weight to "the factors pertaining to the cooperation between parties,

preservation of stability and relationships for the … Children, and the lack of enhancement the relocation would have on the … Children's general quality of life." TCO II at 7. It was within the trial court's purview to do so.

After careful review, we conclude the trial court's findings are supported by competent evidence in the record, and we discern no error or abuse of discretion in its analysis of the relocation factors under Section 5337(h). ***See Carrero***, ***supra***; ***C.R.F.***, ***supra***.

## II. Judicial Bias

In her third issue, Mother claims the trial court abused its discretion in denying her request to relocate with the Children because of the judge's bias against her. Mother's Brief at 64. She points to comments made by the presiding judge during the April 18, 2025 hearing, which she says demonstrate he was "predisposed to deny" her request. ***Id.*** at 64-65; ***see also id.*** at 64 (noting the judge "reminisced about his role as a father" at the beginning of the hearing; suggesting it was apparent that he "allowed his history and personal experiences as a hands-on parent to impact his decision in favor of Father"); ***id.*** at 65 (averring the judge interrupted Mother's testimony during direct examination to "voice[] his distaste over Mother's request for relocation"). Mother also contends the trial court's bias against her is evident in its October 3, 2025 opinion, as the trial court's analysis of the relocation and custody factors failed to acknowledge evidence that favored Mother. ***Id.*** at 66.

Father argues Mother's judicial bias argument is waived because she never raised the issue "at any of the numerous appearances before the trial court." Father's Brief at 39 (citing Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")). He notes the first perceived evidence of the trial court's alleged bias asserted by Mother occurred directly following the judge's interview with the Children, which took place at the start of the first day of trial. *Id.* at 39-40. The parties returned for a second day of testimony, yet Father avers Mother never claimed the trial court was biased against her until after the trial court rendered its decision with which she did not agree. *Id.* at 40.

Contrarily, Mother insists her bias claim has not been waived. Mother's Reply Brief at 4. Rather, she asserts "a party may raise allegation[s] of judicial misconduct for the first time in post-trial motions." *Id.* at 5 (quoting *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1125 (Pa. 2000) (citing *Commonwealth v. Hammer*, 494 A.2d 1054 (Pa. 1985))); *see also id.* (noting the *Harman* Court outlined "circumstances in which objections at the trial level [may] have a 'deleterious effect' on the judge or jury") (quoting *Harman*, 756 A.2d at 1125). Mother contends that if she would have raised her concerns of personal bias by the trial judge during the trial, her efforts would have been "futile," would have had a "deleterious effect on the judge[,]" and would have further alienated the court against her. *Id.* at 8.

Initially, we deem Mother's reliance on *Harman* to be misplaced. In *Harman*, our Supreme Court affirmed, "in order to preserve an issue for

review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions." *Harman*, 756 A.2d at 1124 (citation omitted). It explained, "[r]equiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors." *Id.* However, it recognized:

> There exists … an exception to the waiver doctrine. We first announced this exception in … *Hammer*, [*supra*]. According to our decision in *Hammer*, in limited circumstances, a party may raise allegations of judicial misconduct for the first time in post-trial motions. While trial counsel has an obligation to object to improper language and/or behavior in the courtroom to effectively represent his or her client, there may be circumstances in which objections have a deleterious effect on the jury or even on the judge whose behavior is extremely unprofessional.

*Id.* at 1124-25.

> Critically, the *Harman* Court declared:
>
> *Hammer* did not mark the end of the waiver doctrine in cases of judicial impropriety. To the contrary, the general rule remains that a party waives an issue concerning perceived trial court error, if the party fails both to preserve the issue with a timely and specific objection at trial and present it in post-trial motions. Thus, *Hammer* provides a limited exception to the waiver doctrine. Where it appears from all the circumstances that a timely objection to perceived judicial misconduct would be meaningless, a party may choose to raise the issue for the first time at post-trial motions to preserve it for appellate review.

*Id.* at 1126. While the *Harman* Court determined this limited exception is applicable in civil cases, *see id.*, we conclude the *Hammer* exception is inapplicable in the case *sub judice*, as our Rules of Civil Procedure do not permit the filing of post-trial motions in custody actions. *See* Pa.R.Civ.P.

- 21 -

1915.10(d) ("A party shall not file a motion for post-trial relief to an order of legal or physical custody.").

Additionally, it is axiomatic that this Court "presumes judges are fair and competent." *In re Lokuta*, 11 A.3d 427, 435 (Pa. 2011). Our Supreme Court has made clear:

> In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

*Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017); *see also Reilly by Reilly v. Se. Pa. Trans. Auth.*, 489 A.2d 1291, 1300 (Pa. 1985) ("Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result."); *M.S.E. v. H.A.M.*, No. 659 MDA 2020, unpublished memorandum at 15-16 (Pa. Super. filed Dec. 8, 2020) (concluding judicial bias argument is waived where the appellant "neglected to raise any objections during the custody proceedings concerning the alleged animosity and bias, or request a recusal of the trial judge at any point in the court below").[5]

Here, Mother claims the presiding judge first demonstrated bias against her during his remarks at the beginning of the first day of trial. However, our

---

[5] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

review of the record confirms Mother never raised any objections during the proceedings concerning the alleged bias, nor did she seek recusal of the presiding judge. Thus, we agree with Father and deem Mother's judicial bias claim waived due to her failure to raise the argument in a timely fashion. **See** Pa.R.A.P. 302(a); **Lomas**, **supra**; **Reilly**, **supra**.[6]

### III. Impact of Relocation on Father

In her final issue, Mother claims the trial court's finding Father would be negatively impacted if Mother were permitted to relocate with the Children is contrary to the evidence presented at trial. Mother's Brief at 67. She further avers the October 3, 2025 custody award demonstrates the trial court believed it is in the Children's best interest for Mother to have primary custody; thus, the denial of her request for relocation "solely due to the trial court's speculation that Father would be negatively impacted is in error." **Id.** at 67-68; **see also id.** at 68-69 (arguing the trial court failed to consider the benefits of Father having long periods of custodial time during the summer months, should the trial court grant Mother's request to relocate). Mother's claim is without merit.

---

[6] Notwithstanding waiver, we acknowledge certain statements made on the record by the trial judge displayed, from the outset, his apparent displeasure with Mother's request to relocate with the Children. Our Code of Judicial Conduct dictates "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and **impartially**." Pa. Code of Judicial Conduct, Rule 2.2 (emphasis added). We do not condone behavior on the part of a jurist that may create the appearance of partiality. **Commonwealth v. Dip**, 221 A.3d 201, 206-07 (Pa. Super. 2019).

It is clear the trial court considered **all** the factors set forth in Sections 5328(a) and 5337(h), in reaching its determination regarding custody and relocation. **See** TCO II at 7. As discussed *supra*, the trial court found some factors to carry more weight than others, including the factors pertaining to the cooperation between the parties and the preservation of relationships between the parties and their Children. **Id.**; **see also E.B.**, 209 A.3d at 460 (noting "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case"). The trial court found "there to be a lot of ongoing conflict between the parties and that the majority of the hostility and inability to co-parent stems from Mother." TCO II at 7. It determined "Father is more than willing to co-parent, but Mother tries to undermine or interfere with Father's periods of custody." **Id.** "The court believed this would only be exacerbated if Mother were to be allowed to relocate to Colorado with the … Children." **Id.** Additionally, it found the proposed relocation would "severely hinder" Father's periods of custody and interfere with his ability to be involved in the Children's daily lives, thereby negatively impacting Father's relationship with the Children. **Id.** at 8; **see also** TCO I at 13.

Again, Mother invites this Court to re-find facts and re-weigh evidence in her favor, which we will not do. **See Carrero**, 300 A.3d at 501 ("It is not the role of this Court to re-find facts, re-weigh evidence, and re-assess credibility.") (internal quotation marks and citation omitted). Just because the trial court **could** have found in favor of Mother regarding her request to

relocate is not a sufficient basis for reversal of the trial court's decision. **See id.** "We must accept the findings of the trial court, so long as those findings are supported by competent evidence of record." **Id.** (citation omitted). After careful review, we determine the trial court's finding Father would be negatively impacted by Mother's proposed relocation to be supported by the evidence of record.

To the extent Mother seems to argue that because the trial court granted her primary custody of the Children, it should also have granted her request for relocation, we also deem this argument to be meritless. It is well-settled a court should not dissociate the issue of primary custody from the issue of relocation, "and should instead decide the two issues together under a single umbrella of best interests of the children." **K.F.**, 189 A.3d at 1098 (internal quotation marks and citations omitted). Here, the trial court granted Mother primary custody contingent on its denial of her proposed relocation. **See** Order, 10/3/25, at ¶¶ 1-3. The trial court expressly ordered, "If Mother decides to relocate without the … Children, [Father] shall have sole physical custody." **Id.** at ¶ 1. It is clear the trial court properly considered the effect of the proposed relocation in analyzing the custody factors, with its primary concern being the Children's best interest. **See generally** TCO I at 6-13; TCO II at 7-9. We discern no error of law or abuse of discretion in the trial court's decision.

Accordingly, we affirm the trial court's October 3, 2025 order denying Mother's request to relocate and modifying the terms of custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/27/2026